PUBLISH

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

-------------------------------------------

### No. 97-6773

-------------------------------------------

### D. C. Docket No. CV-79-G-301-NW

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/28/98
THOMAS  K. KAHN
CLERK

DONALD PARRISH, on behalf of themselves and all others
similarly situated, GARY BEASLEY, on behalf of themselves
and all others similarly situated, et al.,

                                        Plaintiffs-Appellees,

        versus

ALABAMA DEPARTMENT OF CORRECTIONS, JOE S. HOPPER,
Commissioner of the Alabama Department of Corrections,

                                        Defendants-Appellants.


-----------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Alabama
-----------------------------------------------------------------

(September 28, 1998)


Before EDMONDSON and BIRCH, Circuit Judges, and  STAFFORD*, Senior
District Judge.

---------------------

*       Honorable William Stafford, Senior U.S. District Judge for the
        Northern District of Florida, sitting by designation.

EDMONDSON, Circuit Judge:

The Alabama Department of Corrections appeals the refusal of the district court to terminate an injunction. We reverse and remand to the district court with instructions to terminate the injunction.

## BACKGROUND

The District Court for the Northern District of Alabama entered an injunction in 1982 prohibiting Alabama and Lauderdale County from housing state prisoners in the Lauderdale County Jail for more than 30 days. The district court entered the injunction to alleviate overcrowding (and associated health problems) at the jail. In 1991, the Governor of Alabama and the Alabama Department of Corrections

3

Commissioner were held in contempt for violating the injunction. In the light of a second contempt order in 1993, Lauderdale County constructed a new jail. The County finished the new jail two years ago. In 1997, the Alabama Department of Corrections moved to terminate the injunction under the Prison Litigation Reform Act, 18 U.S.C.A. § 3626 (West Supp. 1998) ("PLRA"). Lauderdale County opposed the motion. The district

4

court denied the motion, and the Alabama Department of Corrections appeals.

## DISCUSSION

An injunction directed to jail conditions must be terminated if the injunction was issued in the absence of a finding by the district court that the injunction (a) is narrowly drawn, (b)

extends no further than necessary to correct the violation of a federal right, and (c) is the least intrusive means necessary to correct the violation of a federal right. _See id._ § 3626(b)(2). An injunction shall not terminate, however, if the court accurately makes written findings, based on the record, that the injunction "remains necessary to correct a current and ongoing violation of the federal right" and meets the three

criteria in Section 3626(b)(2). _See id._ §

3626 (b)(3).

The parties dispute whether a "current

and ongoing" violation of a federal right

exists at the Lauderdale County Jail.[1]  If

---

[1] The district court made written findings under Section 3626(b)(3) that the 1982 injunction was narrowly drawn, extended no further than necessary to prevent the jail from being overcrowded, and was the least intrusive means to correct and to prevent overcrowding (and related problems) at the Lauderdale County Jail.  Alabama does not contest these findings; so we accept them.  We stress, however, that overcrowding is not necessarily a

7

no violation exists, then the 1982 injunction must be terminated. After examining the record, we conclude the evidence is insufficient to prove that a current and ongoing violation of a federal right exists in the County's jail. Therefore, the injunction must be terminated.

---

violation of a federal right. See Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981). The only issue truly before us is whether the district court's other written findings demonstrate a current and ongoing violation.

Alabama argues that because no constitutional violations exist at the jail right now, no "current and ongoing" violation can exist. This interpretation may be a correct view of what Congress intended.[2] But, Alabama's

[2] Congress's intention in enacting the PLRA looks to be in line with the Supreme Court's view on the involvement of the federal courts in state prison systems. Both Congress and the Court suggest a reduced role for federal courts. When confronted with state prison litigation, the Supreme Court has written that "involvement of federal courts in the day-to-day management of prisons [has

interpretation might be an incorrect

interpretation of "current and ongoing"

because it could blind courts to violations

of federal rights that a court might

reasonably expect to recur soon if the

_____

led to] squandering judicial resources with little offsetting benefit to anyone. . . . [F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." Sandin v. Conner, 515 U.S. 472, 482 (1995); See H.R. Conf. Rep. 104-378 (1995) (stating that Congress designed Section 3626 to ensure that prospective relief is the "minimum necessary to correct the violation of a federal right") (emphasis added).

injunction is dissolved. This interpretation may possibly also give too little weight to the prospective nature of the word "ongoing."[3]

The County has advanced a broader interpretation of "current and ongoing." In the district court, the

---

[3]The phrase "current _and_ ongoing" was originally enacted as "current _or_ ongoing." The phrase was amended in 1997 to its present form. _See_ Department of Justice Appropriations Act, 1998, Pub. L. No. 105-119, § 123(a)(2), 111 Stat. 2440, 2470 (1997) (emphasis added).

11

County contended that "current and ongoing" means a substantial and very real danger that a violation of rights will follow the termination of the injunction. *See* James v. Lash, 949 F. Supp. 691, 693 (N.D. Ind. 1996) (construing "current and ongoing" in PLRA). We need not decide, however, precisely what "current and ongoing" means. Even if we accept – for argument's sake – the County's "substantial and very real

danger" standard, the County cannot prevail in this case.

Whether there is a substantial and very real danger of a violation of a federal right recurring soon at the Lauderdale County Jail in the absence of an injunction may be a mixed question of law and fact. But we need not decide whether it is a mixed question or a question of fact only. Even if we review

for clear error, we do see reversible error.

The district court seemed to rely on two pieces of evidence – a newspaper article and the two contempt orders – to find that constitutional violations are likely to recur if the injunction is lifted. Relying on these two things to find there is a current and ongoing violation of a federal right produced clear error.

First, the court – in a footnote added by amendment to the district court opinion – quoted a newspaper report that included the following statement: "Prisons Commissioner Joe Hopper said Monday state prisoners would continue to back up in county jails until the Legislature properly funds the prison system."[4] We question the usefulness of

[4] Neither party – by motion or by offering the article into evidence at the hearing – seems to have supplied the newspaper article to the district court.

this report of Joe Hopper's statement in determining whether a violation of the federal Constitution is likely to result if the injunction is lifted. See Cofield v. Alabama Pub. Serv. Comm'n, 936 F.2d 512, 517 (11th Cir. 1991) (concluding that district court erred when it took judicial notice of newspaper article as proof of fact asserted in article). The report does not

---

We assume, therefore, the district court amended its opinion to take judicial notice of the newspaper article.

16

suggest that state prisoners would "back up" to the point where the Constitution would be violated. In addition, even if we assume the newspaper is an accurate report of what was said, statements to the press are often made for reasons that have no relation to the true intent of the speaking party. Moreover, to the extent the report indicates disagreement between Alabama's Legislative and Executive Branches that

might, someday, cause overcrowding, this kind of internal conflict about policymaking only further convinces us that a federal court should not interfere now. See Turner v. Safley, 482 U.S. 78, 85 (1987) (stressing deference to state executive and legislative branches in state prison system litigation).

Second, the district court relied on the 1991 and 1993 contempt orders to suggest that overcrowding due to the presence of

state prisoners in county jails will recur.

That the contempt findings were based

on violations of a federal right is,

however, not clear. Violating the 1982

injunction does not necessarily mean

that a federal right was violated. See

Dolihite v. Maughon, 74 F.3d 1027, 1055

(11th Cir. 1996) (failing to meet

requirements of consent decree was no

per se constitutional violation); Green v.

McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986)

("[R]emedial decrees are the means by which unconstitutional conditions are corrected but they do not create or enlarge constitutional rights").

The pertinent injunction in this case is more than fifteen years old. The Supreme Court has cautioned that injunctions are not to stay in place "in perpetuity." Board of Educ. v. Dowell, 498 U.S. 237, 248 (1991).[5] To follow the Court's

---

[5] Dowell makes this statement for consent decrees, but consent decrees and

guidance, earlier violations — made right in the meantime — of the injunction must eventually be forgiven. We conclude that, by now, the past acts of contempt cannot count for much: five years have elapsed since the last contempt finding, a new jail has been constructed, no current constitutional violations exist,

injunctions are interchangeable in this context. See System Fed'n No. 91 v. Wright, 364 U.S. 642, 650-51 (1961).

and the persons then held in contempt have been replaced.

Other considerations aid our conclusion that the record does not support the existence of a substantial and very real danger of violating a federal right at the Lauderdale County Jail. Most important, no one even claims the jail is presently overcrowded. Since the new jail opened, an average of 130 prisoners per day are held in the jail.

The jail has a 153 prisoner capacity. We also note that between 1 July 1997 and 6 July 1997 (the only period for which we have records) the jail held between 78 and 83 inmates. And, a nurse and doctor are now under contract to visit the jail regularly.[6]

_____

[6] By the way, a class-action lawsuit is pending in Montgomery County Circuit Court addressing jail issues such as overcrowding. The certified class consists of "all counties and sheriffs in the State of Alabama which do not currently benefit from court orders enjoining [the Department of Corrections] from

From the record made in the district

court, we conclude, as a matter of law,

that no substantial and very real

_____

retaining state inmates in county jails." Therefore, dissolving the injunction will let Alabama deal with its many prison and jail crowding issues in one lawsuit, rather than confront multiple – and potentially conflicting – district court orders. See generally Chairs v. Burgess, 143 F.3d 1432, 1438 (11th Cir. 1998) (noting existence and significance of potentially conflicting consent decrees regulating Alabama prisons). And, the same state lawsuit will allow the County to litigate without the constraints imposed by the PLRA. The existence of this state court litigation is, however, immaterial to today's result.

danger of a federal right being violated has been proved for the Lauderdale County Jail. We must reverse the district court's order because the evidence will not sustain it.

The district court order is REVERSED and the case is REMANDED with instructions to terminate the 1982 injunction.

REVERSED and REMANDED.